```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FREEDOM MEDICAL INC.             :      CIVIL ACTION
                                 :
          v.                     :
                                 :
THOMAS R. GILLESPIE, III,        :
et al.                           :      NO. 06-3195
```

MEMORANDUM AND ORDER

McLaughlin, J.                                          January 16, 2006

      This is the second of two decisions on motions for protective orders in this matter.  In both motions, individual defendants who have been charged with criminal offenses arising out of the incidents at issue in this civil suit sought protective orders staying discovery on Fifth Amendment grounds both for themselves and for defendant corporations that they own. In a prior Memorandum, dated December 21, 2006, this Court disposed of the first of these motions, brought by defendant Clifford Hall and defendant Signature Medical LTD, LLC ("Signature Medical"), a company wholly-owned by Mr. Hall.  Now, the Court considers the motion of defendants Jason Ragazzo and BioMedix Medical Inc. ("BioMedix"), a company wholly-owned by Mr. Ragazzo.  Like Mr. Hall, Mr. Ragazzo has been charged with multiple felony counts in Pennsylvania state court arising out of the alleged diversion and theft of the plaintiff's equipment at issue in this suit.

In its prior decision, the Court denied Signature Medical's request for a protective order on two grounds. First, this Court held that, as a corporation, Signature Medical did not possess a Fifth Amendment right against self incrimination. Order of December 21, 2006 at 2-3, Freedom Medical Inc. v. Gillespie, 2006 WL 3791339 at *2, (E.D. Pa. December 21, 2006), citing Braswell v. United States, 487 U.S. 99, 100 (1988). Second, this Court held that Mr. Hall's Fifth Amendment rights would not be impaired if Signature Medical were subject to discovery because Signature Medical had several employees and therefore Mr. Hall's testimony would not necessarily be required to verify the authenticity of any documents produced by the corporation, and even if his verification were necessary, it would be taken in his capacity as a representative of a corporation and therefore would not implicate his personal Fifth Amendment right against self-incrimination. Id., citing Braswell at 108-09.

The Court, however, granted Mr. Hall's request for a protective order, finding that his right against self-incrimination could be impaired if his act of responding to the plaintiff's document requests communicated information about the existence, custody, or authenticity of the documents, citing United States v. Hubbell, 530 U.S. 27, 35-36 (2000).

Mr. Ragazzo and BioMedix's request for a protective order is indistinguishable from that of Mr. Hall and Signature Medical's in all but one respect.  Unlike Signature Medical, which had several employees other than its owner Mr. Hall, BioMedix has only one employee, Mr. Ragazzo, who is also its sole shareholder and corporate officer.  This makes it more likely both that Mr. Ragazzo will have to personally verify and produce any BioMedix documents and that Mr. Ragazzo's act of producing those documents could be attributed to him in any criminal proceeding.

This particular risk of self-incrimination for "one-man" corporations was acknowledged by the U.S. Supreme Court when it set out the general rule that individuals producing documents as a custodian of records for a corporation cannot invoke their personal right against self-incrimination.  <u>Braswell</u>, 487 U.S. at 108-09.  In <u>Braswell</u>, the Supreme Court held that an individual's right against self-incrimination did not apply when he or she acted as an agent of the corporation because any verifications or other testimonial acts would be done in the his corporate, rather than individual capacity, and corporations do not have Fifth Amendment rights.  <u>Id.</u>  In a footnote, however, the Supreme Court suggested that the distinction it made between custodians' producing documents in their corporate and individual capacities might not hold true for one-person corporations:

> We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.

Id., 487 U.S. at 118 n.11.

Defendants BioMedix and Ragazzo argue that this Court should follow the suggestion of the Braswell footnote and stay discovery against BioMedix because Mr. Ragazzo is BioMedix's sole shareholder and employee and, if these documents are used in Mr. Ragazzo's criminal proceedings, any criminal jury will "inevitably conclude" that Mr. Ragazzo produced them.  In making this argument, Mr. Ragazzo and BioMedix identify no decision in which any court has followed the Braswell footnote.

To the contrary, every reported decision to consider the Braswell footnote has rejected carving out an exception for one-person corporations to the general rule that corporate custodians cannot invoke the Fifth Amendment to prevent production of corporate documents.  See Amato v. U.S., 450 F.3d 46, 51 (1st Cir. 2006) ("Our case law rejects Amato's argument suggesting that we should recognize an exception to the collective-entity doctrine where the custodian of records is the corporation's sole shareholder, director, officer and employee."); U.S. v. Stone, 976 F.2d 909, 912 (4th Cir. 1992) (answering "the question left open in Braswell" and holding that an individual's status as the sole shareholder, director, officer

-4-

and employee of a corporation did not excuse him from the duty of producing corporate documents as a representative of the corporation); U.S. v. Arizechi, 2006 WL 1722591 at *3 (D.N.J. June 20, 2006) (holding that corporate custodians of "one-man corporations" cannot assert a Fifth Amendment privilege with respect to the production of corporate documents); U.S. v. Milligan, 371 F. Supp.2d 1127, 1128-29 (D. Ariz. 2005); U.S. v. Raniere, 895 F. Supp. 699, 706-07 (D.N.J. 1995); U.S. v. Moseley, 832 F. Supp. 56, 58-59 (W.D.N.Y. 1993).

This Court reaches the same conclusion. The question left open in the Braswell footnote is a very narrow one. Braswell makes clear that a corporate custodian does not incriminate himself for Fifth Amendment purposes when he produces corporate documents in his representative capacity, even though the act of producing those documents might incriminate him if done in his individual capacity. Braswell at 110 ("the custodian's act of production is not deemed a personal act, but rather an act of the corporation"). Braswell also makes clear, however, that the fact that the custodian is producing documents only in his representative capacity restricts the government's ability to use the "individual act" of producing those documents against the custodian. Id. at 118.

In a subsequent criminal prosecution against the custodian, the government "may not introduce into evidence before

the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." Instead, the government can introduce evidence of the "corporate act" of production, including testimony from the process server and the individual who received the records, "establishing that the corporation produced the records subpoenaed." As long as the jury is not told that the criminal defendant produced the documents, the jury may then draw incriminating conclusions from the "corporate act" of production concerning the authenticity of the records and the defendant's possession and knowledge of them. Id.

It is in this discussion that the Braswell court includes its footnote "leav[ing] open" the question whether the distinction between corporate and individual acts of production "supports compelling a custodian to produce corporate records" where a custodian could "establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." Id. at 118 n.11.

Read in context, the Supreme Court is not suggesting in this footnote that the distinction between corporate and individual acts of production is no longer valid when applied to one-man corporations. Such a suggestion would contradict long-standing precedent to the contrary. See, e.g., Bellis v. United

States, 417 U.S. 85, 100 (1974) ("It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be."). Instead, the Supreme Court appears to be suggesting only that a jury might not be able to understand and apply the distinction between corporate and individual acts and might "inevitably conclude" from the admissible corporate act of production the fact of the inadmissible individual act of production.

At least in this case, this Court does not believe that the concern identified in the Braswell footnote justifies a protective order preventing BioMedix from producing its corporate records or preventing Mr. Ragazzo from participating in that production as corporate custodian. At this time, any concern that a criminal jury might attribute BioMedix's production of documents to Mr. Ragazzo personally is overly speculative. To the extent that this concern materializes in the future, the Court believes that it can be adequately addressed by the court presiding over Mr. Ragazzo's criminal matter through limitations on the evidence that can be introduced at trial.

Other than the argument based on the Braswell footnote, there is no difference between Mr. Ragazzo and BioMedix's motion for a protective order and that of Mr. Hall and Signature Medical previously considered by the Court in its Memorandum and Order of December 21, 2006. Accordingly, for the same reasons set out in

that prior Memorandum, the Court will deny Mr. Ragazzo and BioMedix's motion for a protective order as to BioMedix, but will grant the motion as to Mr. Ragazzo.  As was done in the prior Memorandum and Order, and for the same reasons, the Court will permit the plaintiff to seek to lift the protective order as to Mr. Ragazzo after it has received and reviewed the document production from BioMedix.

       An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREEDOM MEDICAL INC. | : | CIVIL ACTION |
| v. | : | |
| THOMAS R. GILLESPIE, III, et al. | : | NO. 06-3195 |

ORDER

AND NOW, this 16th day of January, 2007, upon consideration of the Motion for Protective Order and for Suspension and Stay of Discovery on Behalf of Defendants Jason Ragazzo and BioMedix Medical, Inc. (Docket # 128), and supplemental briefing and responses thereto, and after oral argument, IT IS HEREBY ORDERED that the Motion is DENIED as to defendant BioMedix Medical, Inc. ("BioMedix") and GRANTED IN PART as to defendant Jason Ragazzo, for the reasons stated in the accompanying Memorandum.  Mr. Ragazzo's request for a protective order is granted until such time as the plaintiff has received and reviewed BioMedix's production of documents.  At that time, if the plaintiff believes that it still needs to pursue the production of documents from Mr. Ragazzo, the plaintiff may serve supplemental document requests upon Mr. Ragazzo and file a motion to lift the protective order.

BY THE COURT:

/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.