IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREEDOM MEDICAL INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS R. GILLESPIE, III, | : | |
| et al. | : | NO. 06-3195 |

MEMORANDUM AND ORDER

McLaughlin, J. September 14, 2007

Plaintiff Freedom Medical, Inc. ("Freedom Medical") is a medical equipment company. It purchases and refurbishes medical equipment and then resells, rents, or services that equipment. In this suit, Freedom Medical contends that a number of its now-former employees, including Joseph Janssens, were involved in a conspiracy to steal its inventory and business opportunities. In addition to Mr. Janssens, the complaint names as defendants sixteen other individuals and six corporations that allegedly participated in the scheme.

Freedom Medical's complaint alleged federal causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and state law causes of action for misappropriation of trade secrets, fraud, breach of fiduciary duty, conspiracy, conversion, and breach of contract.

Several of the defendants filed motions to dismiss Freedom Medical's complaint in its entirety. In its recent Order of August 29, 2007, the Court granted these motions in part, dismissing one count of the plaintiff's RICO claims and dismissing the plaintiff's fraud claims as to the moving defendants.

Defendant Janssens did not move to dismiss, but instead answered the complaint and moved for summary judgment. In his motion, Janssens argues that, despite receiving over 7,800 pages of documents from him in discovery and taking his deposition, Freedom Medical has no evidence to support any of its claims against him. Freedom Medical has responded by cross-moving for summary judgment as to Janssens' liability on all claims against him, arguing that not only does it have sufficient evidence to go to a jury on these claims, but that no reasonable jury could fail to find him liable.

The Court will grant defendant Janssens' motion for summary judgment as to Freedom Medical's federal RICO claims and deny Freedom Medical's cross-motion for summary judgment on those claims. The Court does not reach the merits of the cross-motions for summary judgment on Freedom Medical's state law claims, but dismisses them without prejudice for lack of jurisidiction. The Court finds that these claims do not form part of the same case or controversy as the remaining federal claims against the other

defendants and that, therefore, this Court lacks supplemental jurisdiction over them.

## I. Background

Most of the relevant facts are undisputed. Joseph Janssens was hired as Regional Manager of Freedom Medical's Baltimore-Washington branch beginning in August 2000. Before beginning his employment, he signed an offer letter from Freedom Medical on or about July 25, 2000. The offer letter stated that, as a condition of employment, Mr. Janssens agreed not to disclose Freedom Medical's confidential information.[1]

Approximately a year later, on August 28, 2001, Mr. Janssens executed a non-competition agreement with Freedom Medical, the stated consideration for which was participation in the "Freedom Medical Equity Participation Plan." This agreement contained provisions, similar to those in the offer letter, requiring Janssens not to disclose Freedom Medical's confidential information.

The non-competition agreement also contained provisions restricting Janssens' ability to engage in competing businesses, both while he was employed at Freedom Medical and for a period of one year after he left the company "for any reason whatsoever."

---

[1] 7/24/00 Letter of Frank Gwynn to Joseph Janssens, attached as Ex. B to Freedom Medical's Cross-Motion for Summary Judgment.

These provisions stated that Janssens could not, without the prior written consent of Freedom Medical, "engage in, conduct and/or solicit" business that is "similar to, in competition with, or the same as" Freedom Medical's in any geographic area in which Janssens solicited sales for Freedom Medical or within 75 miles of the Freedom Medical office in which he worked. Freedom Medical's business was defined as "research, development, engineering, integration, manufacture, production, purchasing, leasing and/or selling of emergency medical equipment and supplies, such as (without limitation) defibrillators, patient monitors, infusion therapy devices, and other emergency medical equipment and supplies and related concepts, plans, or processes."[2]

The agreement also provided, in pertinent part, that Janssens was not to "solicit, attempt to solicit, aid in the solicitation or service in any way, or otherwise do business with any customer, potential customer, vendor or supplier of Freedom Medical so as to offer, sell or provide any product or services that would be competitive with any products or services sold or provided by Freedom Medical during the period that [Janssens] is engaged by Freedom Medical" or any products or services that were being developed by Freedom Medical during Janssens' employment.

---

[2] 8/28/01 Non-Disclosure, Non-Compete, and Property Rights Agreement, attached as Ex. D to Freedom Medical's Cross-Motion for Summary Judgment.

Freedom Medical also had an employee handbook, revised as of September 2001. This handbook, in a section entitled "Moonlighting," specifically stated that Freedom Medical had "no objection" to its employees working second jobs as long as, in pertinent part, their second employer was not a "competitor or customer of the Company" and the employee obtained "prior written approval from the general manager before starting your second job."[3]

It is undisputed that, while employed at Freedom Medical, Joseph Janssens was also employed as an independent contractor, at different times, by four other companies. In its cross-motion for summary judgment, Freedom Medical argues that two of these companies, Quality Medical Group and Quality Medical South, were its direct competitors and that Janssens' work for them breached his employment agreement and constituted breach of fiduciary duty, conversion, and other torts. Freedom Medical does not argue that Janssens' work for either of the other two companies, Adima and Progressive Medical, breached his contract or gave rise to tort liability.[4]

---

[3] Excerpt from September 2001 Freedom Medical Employee Handbook, attached as Ex. E to Plaintiff's Cross-Motion.

[4] Janssens testified that he began working for Adima, a company that specializes in infusion equipment, shortly after he started working at Freedom Medical and that this was arranged for him by Freedom Medical's president Frank Gwynn as a way of supplementing Janssen's income. Deposition of Joseph Janssens ("Janssens Dep.") at 22-24, excerpts attached as Ex. A to

Janssens concedes he was an independent contractor for Quality Medical Group and Quality Medical South at the same time that he was employed by Freedom Medical. He also concedes that both Quality Medical entities and Freedom Medical were in the same business of selling and servicing medical equipment. Janssens Dep. at 25-27, 36-39. Checks produced by Mr. Janssens show he received commissions for sales made by both Quality Medical entities from September 2004 through May 2006. Plaintiff's Cross-Motion Ex. F. Janssens testified that he did not tell any of his supervisors at Freedom Medical that he was working for the Quality Medical entities. Janssens Dep. at 52-3. Freedom Medical's president has submitted an affidavit stating that Janssens was never authorized to do work for either Quality Medical entity.[5]

Janssens testified that he referred customers to the Quality Medical entities only after first determining that Freedom Medical could not supply his customers' needs. Janssens said that he would usually call Freedom Medical's corporate

---

Plaintiff's Cross-Motion and attached in its entirety as Ex. 5 to Janssens' Reply in Support of its Motion for Summary Judgment. Janssens testified that Progressive Medical sells "disposibles and surgical devices" but does not sell medical equipment. Janssens Dep. at 41-44. Janssens argues that Progressive Medical is not therefore a competitor of Freedom Medical's. Freedom Medical's briefing does not argue that Janssens' work for Adima or Progressive Medical forms a basis for liability here.

[5] Affidavit of Frank Gwynn ("Gwynn Aff."), attached as Ex. C to Plaintiff's Cross-Motion.

office and speak to Dominic Greco, Frank Gwynn, Thomas Gillespie or Patrick Frayne before referring the business to another vendor. He said he did this, not necessarily to get approval to refer the business, but to find out whether Freedom Medical could supply the needs of his customer. Janssens Dep. at 80-81, 84. On at least one occasion, Janssens testified that he did not check first with Freedom Medical before referring a customer to Quality Medical South because he knew this particular customer "wouldn't do business with Freedom Medical." Id. at 135, 140.

Janssens testified that Freedom Medical's practice when he began as an employee was to refer business to other companies when Freedom Medical could not satisfy a customer's needs: "That's how we would try to provide value added service to our customers, by saying if we can't do it, here [are] some numbers of other people to call." Id. at 83. At some point after that, he conceded, Freedom Medical's practice changed and that, if Freedom Medical could not fill a customer request, the usual practice was for Freedom Medical to purchase the needed equipment and then re-sell it to the customer. Id. at 94.

Freedom Medical argues that as a result of Janssens' work for other companies, Freedom Medical's revenues in its Baltimore-Washington branch declined from 2003 to 2006. Freedom Medical has submitted affidavit testimony that Janssens was often absent from the Baltimore office and that customers and other

employees were unable to reach him when needed. Gwynn Aff. at ¶ 10. Freedom Medical terminated Janssens on April 7, 2007. Janssens notes in response that Freedom Medical declared bankruptcy in December 2004 and argues that the resulting disruption in Freedom Medical's business is the cause of its decline in revenues.

After Janssens was terminated from Freedom Medical, he incorporated a limited liability corporation, Tidewater Medical Speicalties, LLC ("Tidewater"), on April 17, 2006. Janssens testified that he created the corporation because he was thinking about "representing other product lines." He said that he never did any business through Tidewater, because he "never picked up any new product lines" and because he started working full-time for Progressive Medical. Janssens Dep. at 164-67.

In addition to the facts concerning Janssens' agreements with Freedom Medical and his work for other companies, Freedom Medical has also proffered evidence concerning Janssens' contacts with other defendants. Janssens testified that he spoke on several occasions to Thomas Gillespie, the alleged ringleader of the fraudulent scheme pled in the complaint. Janssens Dep. at 80, 188. In addition Janssens' phone records show four phone calls between him and Gregory Salerio, another alleged participant in the scheme, between April 18, 2005, and March 23, 2006, and pages from Mr. Salerio's appointment books contain

notations concerning Janssens on pages for April 11, May 10, and July 26, 2006.[6]

II. Analysis

Summary judgment will be granted where "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding summary judgment the Court will view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. See Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

After the Court's recent disposition of the motions to dismiss, Freedom Medical has eight remaining causes of action against Janssens: RICO violations under 18 U.S.C. § 1962(c), RICO conspiracy under 18 U.S.C. § 1962(d), and state law claims for breach of contract, misappropriation of trade secrets, fraud, breach of fiduciary duty, conspiracy, and conversion.

---

[6] Ex. H and Ex. I to Plaintiff's Cross-Motion; see also Janssens' Reply to Freedom Medical's Opposition to Janssens' Motion for Summary Judgment at 9-10.

A. RICO Claims

As to the two RICO claims, Freedom Medical has fallen far short of meeting its burden of showing an issue of genuine material fact for trial. As discussed in more detail in the Court's Memorandum and Opinion addressing the motions to dismiss, to establish a defendant's liability under RICO § 1962(c), a plaintiff must show that the defendant (i) conducted or participated in the conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). Here, Freedom Medical has failed to establish evidence sufficient to establish the existence of the enterprise alleged or to establish defendant Janssens' participation in that enterprise.

The remaining substantive RICO count in the complaint alleges that Janssens participated in an association-in-fact enterprise consisting of all the named defendants. To establish the existence of an enterprise, a plaintiff must show evidence of an ongoing organization, formal or informal; evidence that the various associates of the enterprise function as a continuing unit; and evidence that the enterprise has an existence separate and apart from the pattern of activity in which it engages. United States v. Riccobene, 709 F.2d 214, 221 (3d Cir. 1983).

Here, Freedom Medical has presented no evidence at all concerning the alleged association-in-fact of the named

defendants. Although Freedom Medical's complaint alleged an organizational structure for the association-in-fact, with defendant Thomas Gillespie as head and defendants Gregory Salerio, George Rivera, and Cliff Hall as important participants, Freedom Medical has submitted no evidence at all concerning these defendants or their interactions.

In responding to a summary judgment motion, a plaintiff cannot rest on the allegations of its complaint, but must set forth by affidavit or other evidence specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Freedom Medical has not argued that additional discovery is necessary to gather such evidence. To the contrary, it has contended that it has presented sufficient evidence to justify summary judgment in its favor on its RICO claim. Freedom Medical's failure to present any evidence supporting the existence of the enterprise it alleged therefore justifies dismissal of its RICO claim.[7]

[7] Freedom Medical argues in passing that Janssen's "association" with the two owners of Quality Medical Group and Quality Medical South constitutes a RICO enterprise. Other than making the bare assertion that these three men constitute an enterprise, Freedom Medical offers no evidence as to any of the required elements for an enterprise set out in Riccobene. Freedom Medical's allegation that these men constitute an enterprise would be insufficient to survive a motion to dismiss, much less raise the genuine issue of fact necessary to survive summary judgment.

Even if Freedom Medical had presented sufficient evidence to substantiate the alleged association-in-fact's existence as an enterprise, Freedom Medical's RICO claim would still fail for failure to produce sufficient evidence showing Janssen's participation in that enterprise. To make out a RICO claim, a plaintiff must show that the defendant conducted or participated in the conduct of the enterprise's affairs. Reves v. Ernst & Young, 507 U.S. 170, 185 (1990); Univ. of Md. at Balt. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir. 1993). The plaintiff must also show that any predicate acts committed by the defendant were connected to the enterprise: "all predicate acts in a pattern must somehow be related to the enterprise." Banks v. Wolk, 918 F.2d 418, 424 (3d Cir. 1990). The principal evidence that Freedom Medical has put forward to show Janssens' participation in the alleged association-in-fact among the defendants is his telephone calls with Thomas Gillespie and Gregory Salerio. These calls are insufficient to create an issue of material fact on this issue.

The only evidence produced at summary judgment of Janssens' calls with Gillespie is Janssens' deposition testimony, in which he stated that he called Gillespie at Freedom Medical's corporate headquarters for business purposes. Freedom Medical has offered no evidence to contradict Janssens' testimony, and because Gillespie was Freedom Medical's Vice-President of Sales

with whom Janssens would have reason to speak, there is no basis for an inference that the calls were for any improper purpose. Similarly, the evidence of Janssens' contact with Salerio shows, at most, seven conversations in fifteen months, two of which occurred after Janssens had left Freedom Medical. The only evidence of the subject of these conversations is Janssens' testimony that he had a conversation with Salerio about "personal business" after he left Freedom Medical. Janssens Dep. at 152-54. There is no basis for an inference that Janssens' calls with Salerio were connected in any way to the alleged association-in-fact.

Freedom Medical also argues that Janssens' incorporation of the Tidewater LLC suggests a connection to the other named defendants. Freedom Medical's complaint alleges that certain key defendants created closely-held companies, all co-owned by alleged ringleader Thomas Gillespie, to aid in re-selling medical equipment stolen from, and taking advantage of business opportunities diverted from, Freedom Medical. Compl. ¶¶ 50, 54, 56, 95. Freedom Medical asserts that Tidewater was similarly formed in connection with the RICO schemes alleged in the complaint. Other than speculation, however, Freedom Medical offers no evidence of any connection between Tidewater and the alleged Gillespie-led scheme to divert its business and equipment. Freedom Medical has offered no evidence to dispute

Janssens' testimony that Tidewater never did any business or that Janssens created it after he was terminated from Freedom Medical as a possible vehicle for doing business on his own.

On these facts, therefore, Freedom Medical has failed to present evidence that would allow a reasonable jury to find that Janssens participated in the alleged enterprise or that there was the required nexus between the enterprise and Janssens' alleged predicate acts. Having failed to produce sufficient evidence of the first two required elements of a RICO claim, Freedom Medical's substantive RICO claim against Janssens (Count II) must be dismissed.[8] For the same reason, Freedom Medical's RICO conspiracy claim (Count III of its complaint) must also be dismissed. A RICO conspiracy claim under 18 U.S.C. § 1962(d) "must fail if the substantive claims are themselves deficient." Lum, 361 F.3d at 227 n.5.

B. State Law Claims

Having dismissed the only federal law claims against defendant Janssens, the Court finds that it lacks supplemental jurisdiction over the remaining state law claims. The Court will

---

[8] Because the Court has found that Freedom Medical has failed to present sufficient evidence to allow a jury to find either the existence of an enterprise or Janssens' participation in that enterprise, the Court need not address the sufficiency of Freedom Medical's evidence concerning the pattern of racketeering and Janssens' predicate acts.

therefore dismiss them without prejudice to Freedom Medical's ability to re-file them in state court.

The Court's original jurisdiction over this action is based on the federal question presented by Freedom Medical's RICO claims. The Court's power to hear Freedom Medical's state law claims is based on the supplemental jurisdiction authorized by 26 U.S.C. § 1367. That statute authorizes a district court that has original jurisdiction over a case to exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a).

For the Court to exercise supplemental jurisdiction, the state and federal claims must "derive from a common nucleus of operative fact" and the claims must be "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Where state claims are totally unrelated to the federal claims that form the basis of the court's jurisdiction, a district court cannot exercise supplemental jurisdiction. Krell v. Prudential Ins. Co. of Am., 148 F.3d 283, 302 (3d Cir. 1998).

Determining whether federal and state claims are part of the same case or controversy is a case-by-case inquiry. Lyon,

45 F.3d at 760. When the same underlying acts give rise to both state and federal liability, the common nucleus of operative fact is usually obvious. In contrast, where state and federal claims are factually distinct, the claims will typically not be part of the same case or controversy. Id.

In Lyon, a plaintiff brought federal claims under the Fair Labor Standards Act for failure to pay overtime wages and state law contract and tort claims for failure to pay certain bonuses. The Lyon court held that the two claims did not arise from the same nucleus of operative fact because they involved separate employer actions and their only point of commonality was that they involved the same employer/employee relationship. Lyon at 762. In contrast, in Krell, the plaintiff brought federal securities fraud claims and state law contract, tort and statutory consumer protection claims. The court found that the federal and state claims arose from the same nucleus of operative fact because they all arose from the same common scheme to defraud and that the facts underlying the alleged federal securities law violation were "so intertwined with the other misrepresentations and frauds" that they had the same "factual predicate, making extension of federal jurisdiction appropriate." Krell at 292, 302-03.

Here, the claims against Janssens, as revealed by the evidence presented at summary judgment, arise out of an entirely

separate set of facts from those giving rise to the federal RICO claims against the other defendants.

As originally pled in the complaint, defendant Janssens was alleged to be part of a conspiracy to steal equipment and business opportunities from Freedom Medical and to falsely sell to Freedom Medical equipment that they did not own. This conspiracy was allegedly led by Thomas Gillespie with significant roles played by Greg Salario, George Rivera, and Cliff Hall. The complaint detailed what it described as six "schemes" by the defendants to defraud Freedom Medical, including the diversion of Freedom Medical's equipment and business opportunities, the fraudulent sale of equipment to Freedom Medical, and the theft of assets and business from Freedom Medical's emergency medical services division and New York home infusion business. Compl. ¶¶ 46-47.

The evidence presented in the briefing for Janssens and Freedom Medical's cross-motions for summary judgment depicts a much different set of activities than those described in the complaint. As discussed above, the evidence presented is insufficient to show that Janssens participated in the fraudulent schemes allegedly committed by the other defendants. Instead, the evidence produced at summary judgment shows, at most, that Janssens was moonlighting for Quality Medical Group and Quality Medical South at the same time he was employed by Freedom

Medical. Janssens' moonlighting may be a violation of his employment contract or his fiduciary duties as an employee, and it may give rise to liability for various state law torts, but it has nothing to do with the fraudulent schemes alleged in Freedom Medical's complaint which give rise to the federal RICO claims here.[9]

Because the state law claims against Janssens do not arise from the same nucleus of operative fact as the federal claims remaining against the other defendants, the claims against Janssens are not part of the same case or controversy. This Court therefore does not have supplemental jurisdiction over the remaining state law claims against Janssens and they must be dismissed. This dismissal is without prejudice to Freedom Medical's ability to re-file those claims in the appropriate state court.

An appropriate Order follows.

---

[9] The breach of contract claim against Janssens is in one way similar to the breach of contract claims Freedom Medical has brought against certain of the other defendants in that all of the contract claims allege breaches of the same confidentiality and non-competition provisions of the defendants' employment and non-competition agreements. Although these claims involve the same contract provisions, they involve separate and distinct sets of facts. Janssens' moonlighting with Quality Medical Group and Quality Medical South arises from a separate nucleus of operative fact from the other defendants' alleged scheme to steal Freedom Medical's equipment and business opportunities, even though both sets of behavior may be in breach of the same non-compete provisions of Freedom Medical's employment contract.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREEDOM MEDICAL INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS R. GILLESPIE, III, | : | |
| et al. | : | NO. 06-3195 |

ORDER

AND NOW, this 14th day of September, 2007, upon consideration of the Motion for Summary Judgment of Defendant Joseph Janssens (Docket No. 187) and the Opposition and Cross-Motion for Summary Judgment of Plaintiff Freedom Medical, Inc. ("Freedom Medical") (Docket No. 208), and the briefing thereto, IT IS HEREBY ORDERED, for the reasons set out in the accompanying memorandum, that:

1) Defendant Janssens' Motion is GRANTED IN PART as to Counts II and III of Freedom Medical's complaint, alleging violations of 18 U.S.C. § 1962(c) and (d). Defendant Joseph Janssens is granted judgment on those claims and they are dismissed with prejudice. Plaintiff Freedom Medical's Motion is DENIED as to Counts II and III of Freedom Medical's complaint.

2) As to the state law claims of the complaint, Counts IV to IX, both motions are DENIED AS MOOT because the Court finds it lacks supplemental jurisdiction over those claims.

3) Having found that it lacks supplemental jurisdiction over the state law claims asserted against Joseph

Janssens, the Court will dismiss Counts IV to IX of the complaint as to Janssens without prejudice to Freedom Medical's ability to re-file those claims in state court.

4) The Clerk of Court will notate the docket of this case to show that Joseph Janssens is terminated as a party to this action.

BY THE COURT:

/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.